IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. **12-cv-1708-JLK-KLM**

**COALITION FOR SECULAR GOVERNMENT, a Colorado nonprofit corporation,**

      Plaintiff,

v.

**SCOTT GESSLER, in his official capacity as Colorado Secretary of State,**

      Defendant.
_____

ORDER CERTIFYING QUESTIONS UNDER RULE 21.1, Colo. R. App. P.
_____

KANE, J.

In my September 6, 2012, Order staying briefing and ordering a status report (Doc. 25), I asked the parties to address whether the issues in this case are appropriate for certification to the Colorado Supreme Court under Colo. R. App. P. Rule 21.1. After reviewing the Joint Status Report and the parties' expedited briefs on the merits of the case, I conclude the statutory and rulemaking interpretations necessary to the First Amendment questions presented are uniquely matters of state law and act *sua sponte* to certify them now.

Colorado Appellate Rule 21.1 provides that a federal district court may certify a question to the state Supreme Court where an action involves "questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court." The instant lawsuit is such an action, in that it raises

First Amendment challenges to several provisions of Colorado's campaign finance law that remain undefined by the Colorado Constitution, Article XXVIII's implementing legislation, or the Colorado courts. Clear guidance from the Colorado Supreme Court as to the scope and meaning of these challenged provisions is likely determinative of most or all of the questions presented in this case.

## Questions Certified.

Having reviewed the Joint Submission of Questions Proposed for Certification (Doc. 33), and incorporating by reference the statement of facts set forth therein, I CERTIFY the following questions to the Colorado Supreme Court:

1. Is the policy paper published by the Coalition for Secular Government (CSG) in 2010 "express advocacy" under Art. XXVIII, § 2(8)(a) of the Colorado Constitution?

2. If the policy paper is express advocacy, does it qualify for the press exemption found at Art. XXVIII, § 2(8)(b)?

3. Is the policy paper a "written or broadcast communication" under § 1-45-103(12)(b)(II)(B), C.R.S.? If not, did it become a "written or broadcast communication" when it was posted to CSG's blog or Facebook page?

4. In light of *Sampson v. Buescher*, 625 F.3d 1247 (10th Cir. 2010), what is the monetary trigger for Issue Committee status under Art. XXVIII § 2(10)(a)(II) of the Colorado Constitution?

The parties' Joint Submission is appended to this order for ease of reference by the Colorado Supreme Court.

Dated October 2, 2012.

                                              s/John L. Kane
                                              SENIOR U.S. DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-01708-JLK

COALITION FOR SECULAR GOVERNMENT,
a Colorado nonprofit corporation,

Plaintiff,

v.

SCOTT GESSLER,
in his official capacity as Colorado Secretary of State,

Defendant.

**JOINT SUBMISSION OF QUESTIONS PROPOSED FOR
CERTIFICATION TO THE COLORADO SUPREME COURT**

### I.     Relevant facts

In November 2002, Colorado voters passed Amendment 27, which amended Article XXVIII of the Colorado Constitution to include several new campaign financing provisions that apply to both candidate and ballot initiative elections.  *See, e.g., Colorado Right to Life Committee, Inc., v. Coffman,* 498 F.3d 1137, 1139 (10th Cir. 2007).  With respect to ballot initiatives, Amendment 27 sets campaign finance reporting and disclosure requirements for "issue committees," which include "any person, other than a natural person, or any group of two or more persons, including natural persons: (I) that has a major purpose of supporting or opposing any ballot

1

issue or ballot question; [and]¹ (II) that has accepted or made contributions or expenditures in excess of two hundred dollars to support or oppose any ballot issue or ballot question."  Colo. Const. art. XXVIII, § 2(10).  Section 1-45-103(12)(b), C.R.S. (2012) provides a definition of "major purpose."

Plaintiff Coalition for Secular Government (CSG) is a Colorado non-profit corporation incorporated on July 17, 2008.  Diana Hsieh, Ph.D., is the founder and president of CSG. She has also served as its registered agent, both for purposes of its corporate filings and for the issue committees established by CSG in 2008 and 2010.  Consistent with Colorado law, CSG's corporate filings do not list any particular purpose.  CSG's website, however, describes the organization as follows:

> The Coalition for Secular Government advocates government solely based on secular principles of individual rights. The protection of a person's basic rights to life, liberty, property, and the pursuit of happiness -- including freedom of religion and conscience -- requires a strict separation of church and state.
>
> Consequently:
>
> 1. We oppose any laws or policies based on religious scripture or dogma, such as restrictions on abortion and government discrimination against homosexuals.
>
> 2. We oppose any government promotion of religion, such as the teaching of "intelligent design" in government schools and tax-funded "faith-based initiatives."

---

¹ Amendment 27 uses the disjunctive "or" instead of "and."  By regulation, the Secretary has interpreted § 2(10) as requiring both "a major purpose" and a minimum contribution/expenditure requirement.  *See Independence Institute v. Coffman,* 209 P.3d 1130, 1135 (Colo. App. 2008)

2

> 3. We oppose any special exemptions or privileges based on religion by government, such as exemptions for churches from the tax law applicable to other non-profits.
>
> The only proper government is a secular government devoted to the protection of individual rights.
>
> The Coalition for Secular Government seeks to educate the public about the necessary secular foundation of a free society, particularly the principles of individual rights and separation of church and state.

CSG is not connected with any political candidate or any political party.

CSG's organizational activities consist of: 1) a blog, 2) public advocacy including editorials and letters to newspaper editorial pages, and 3) publication and distribution of a "public policy paper" in the months leading up to the 2008 and 2010 general elections. The blog receives an approximate average of 5,000 hits per week and is updated, on average, 1-3 times per week with postings discussing philosophy, religion, current events, public policy issues and other topics. The blog features occasional YouTube videos covering a topic or series of topics in-depth. CSG also maintains a Facebook page with more than 200 "likes." The public policy paper was published for the first time shortly after CSG's incorporation in 2008. CSG updated and expanded the public policy paper in 2010. A copy of the 2010 paper is attached hereto.

Because it spends no money on the blog, all of CSG's budget has historically been devoted to publishing and distributing the public policy paper. In 2008 CSG collected $200 in monetary contributions and $229.25 in

3

non-monetary contributions.  In 2010, CSG received and spent $2951.16 in monetary and nonmonetary contributions.  In both years, CSG registered as an issue committee and reported the contributions and expenditures associated with the public policy paper.  CSG's 2008 issue committee was established July 29, 2008 and terminated November 30, 2008.  CSG's 2010 issue committee was established September 27, 2010 and terminated April 1, 2011.

CSG plans to update, expand, advertise, and distribute the Public Policy Paper once again in 2012. CSG plans to raise less than $3,500 for these activities, but does not intend to file as a Colorado Issue Committee in 2012. Meanwhile, CSG has continued and will continue to operate its blog, Facebook page, and other electronic media.  CSG intends to update and expand the Paper in future years, including years in which a Personhood amendment may appear on the Colorado ballot.[2]  These efforts will involve papers substantially similar to the paper published in 2010.

---

[2] The Secretary issued a letter of insufficiency to the Personhood proponents on August 28, 2012.  On September 27, 2012, the Personhood proponents protested the Secretary's determination in Denver District Court.  *See* § 1-40-118, C.R.S. (2012).  Because ballots are printed and the counties are in the process of distributing them, the Personhood Amendment would not appear on the 2012 ballot even if this challenge were successful.  *See Buckley v. Chilcutt,* 968 P.2d 112 (Colo. 1998) (if insufficiency determination is successfully challenged after ballot certification deadline, remedy under state law is placement of initiative on subsequent general election ballot).

4

## II. Standard for certification

Colorado Appellate Rule 21.1 permits the Colorado Supreme Court to answer a question of law certified to it by a United States District Court if the question "may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the [Colorado] Supreme Court." Colo. App. R. 21.1(a).

CSG's lawsuit raises First Amendment challenges to several provisions of Colorado campaign finance law that remain undefined by the Colorado Constitution, Article XXVIII's implementing legislation, or caselaw from Colorado courts.  Specifically, this Court has not had an opportunity to clarify: 1) whether publications such as CSG's public policy paper qualify as "express advocacy;" 2) whether publications such as CSG's public policy paper qualify for the press exemption of Art. XXVIII, § 2(8)(b) or are "written or broadcast communications under § 1-45-103(12)(b)(II)(B); 3) the parameters of assessing what constitutes "a major purpose" of supporting a ballot issue or ballot question; and 4) the impact that the in *Sampson v. Buescher,* 625 F.3d 1247 (10th Cir. 2010), had on monetary component of issue committee status under Art. XXVIII, § 2(10)(a)(II).

Clear guidance from the Colorado Supreme Court as to the scope and meaning of these challenged provisions is potentially determinative of several of the questions presented in CSG's federal lawsuit.

5

### III.     Questions to be certified:

The following questions shall be certified:

    a. Is the policy paper published by CSG in 2010 "express advocacy" under Art. XXVIII, § 2(8)(a)?

    b. If the policy paper is express advocacy, does it qualify for the press exemption found at Art. XXVIII, § 2(8)(b)?

    c. Is the policy paper a "written or broadcast communication" under § 1-45-103(12)(b)(II)(B)?  If not, did it become a "written or broadcast communication" when it was posted to CSG's blog or Facebook page?

    d. In light of *Sampson v. Buescher,* 625 F.3d 1247 (10th Cir. 2010), what is the monetary trigger for Issue Committee status under Article XXVIII § 2(10)(a)(II)?

Respectfully submitted this 28th day of September, 2012.

                                       JOHN W. SUTHERS
                                       Attorney General

                                       s/*Maurice G. Knaizer*
                                       MAURICE G. KNAIZER*
                                       Deputy Attorney General
                                       LEEANN MORRILL*
                                       MELODY MIRBABA*
                                       MATTHEW GROVE*
                                       Assistant Attorneys General
                                       Public Officials
                                       State Services Section
                                       Attorneys for Secretary Gessler
                                       1525 Sherman Street, 7th Floor
                                       Denver, Colorado 80203

Telephone: (303) 866-5380
FAX: (303) 866-5671
E-Mail: maurie.knaizer@state.co.us
leeann.morrill@state.co.us
Melody.mirbaba@state.co.us
Matthew.grove@state.co.us
*Counsel of Record


s/ *Allen Dickerson*
Allen Dickerson
Tyler Martinez
Center for Competitive Politics
124 West Street South
Suite 201
Alexandria, Virginia 22314
adickerson@campaignfreedom.org
tmartinez@campaignfreedom.org
Attorneys for Coalition for Secular Government